IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :

       v.              :     CRIMINAL NO. 1:CR-00-198
                      CRIMINAL NO. 1:CR-00-350

DAVID ARTHUR LUCAS,             :     CRIMINAL NO. 1:CR-01-152
           Defendant        CRIMINAL NO. 1:CR-01-182
                 :     (Judge Kane)




TRANSCRIPT OF PROCEEDINGS

CHANGE OF PLEA


Before:  Hon. Yvette Kane, Judge

Date:  August 23, 2001

Place:  Courtroom No. 4
       Federal Building
       Harrisburg, Pa.

FILED
HARRISBURG, Pa

MAY 1 4 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk


COUNSEL PRESENT:

    DENNIS C. PFANNENSCHMIDT, Assistant U.S. Attorney

        For - Government

    JEFFREY S. HARK, Esquire

        For - Defendant

                     Monica L. Zamiska, RPR
                     Official Court Reporter

1          THE COURT:  Good morning, counsel.

2          MR. PFANNENSCHMIDT:  Good morning, Your Honor.

3          MR. HARK:  Good morning, Your Honor.

4          MR. PFANNENSCHMIDT:  Your Honor, this is the matter

5    of United States v. David Lucas.  It's captioned at four

6    different charging documents.  They are 1:CR-00-198,

7    1:CR-00-350, 1:CR-01-152 and 1:CR-01-182.  In 198 Mr. Lucas

8    is charged in a one count indictment with the offense of bank

9    robbery to which he had previously entered a plea of not

10   guilty.  At 350 he's charged in a one count indictment with

11   the offense of bank robbery.  This is a Rule 20 from the

12   Western District of Pennsylvania, and this is his first

13   appearance on that matter.  In 152 he's charged in a one

14   count information with the offense of bank robbery.  This is

15   his first offense, excuse me, first appearance on that

16   matter.  In 182 he is charged in a three count information

17   with the offenses of bank robbery, two counts, and using a

18   firearm during a crime of violence.  That is a Rule 20 from

19   the Eastern District of Pennsylvania, and it's his first

20   appearance on that matter.

21          Your Honor, there is a plea agreement in this

22   matter that has been reached, and he is present to enter a

23   plea of guilty to each of these charges with Mr. Hark, his

24   counsel.

25          THE COURT:  All right.  Mr. Lucas, Mr. Hark, is Mr.

1   Pfannenschmidt's representation of the situation here

2   correct?

3          MR. HARK:  Correct, Your Honor.

4          THE COURT:  Mr. Lucas, we're off to a late start

5   this morning.  I understand that your lawyer needed some time

6   to consult with you.  You have these three new charges

7   pending.  Did you have a chance to go over the charges with

8   your lawyer this morning?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  I want you to look at them now.  I have

11  case No. 1:CR-01-182 before me.  It's an information.  It

12  contains two counts, Mr. Pfannenschmidt?

13         MR. PFANNENSCHMIDT:  It's actually a three count

14  information, Your Honor.  It charges in Count 1 an armed bank

15  robbery, Count 2 is the using a firearm during a crime of

16  violence and Count 3 is also an armed bank robbery.

17         THE COURT:  And in this particular case the

18  defendant is going to plead guilty to all three of the

19  counts.  Am I right?

20         MR. PFANNENSCHMIDT:  Yes, Your Honor.

21         MR. HARK:  That is correct, Your Honor.

22         THE COURT:  Mr. Lucas, if you would take a copy of

23  the information and follow with me, I'm going to go over the

24  charges with you.  The first count alleges that on or about

25  March 22 in the year 2000 in the Eastern District of

1    Pennsylvania that you, the defendant David Lucas, knowingly

2    and unlawfully by force and violence and by intimidation took

3    from employees of the Great Valley Bank at 799 State Street,

4    Pottstown, Pennsylvania, here and after the bank, lawful

5    currency of the United States; that is, approximately $7,876

6    belonging to and in the care, custody, control, management

7    and possession of the bank, the deposits of which were

8    insured by the F.D.I.C., and in doing so that you, the

9    defendant David Lucas, knowingly and unlawfully assaulted and

10   put in jeopardy the lives of the employees of the bank and

11   other persons by use of a dangerous weapon; that is, an SKS

12   semi-automatic rifle.  The information alleges that you did

13   these things in violation of Title 18, United States Code,

14   Section 2113(d).

15       Count 2 of the information alleges that on or about

16   March 22, 2000 in the Eastern District of Pennsylvania that

17   you, the defendant David Lucas, knowingly used, carried and

18   brandished a firearm; that is, an SKS semi-automatic rifle

19   during and in relation to a crime of violence for which you

20   might be prosecuted in a court of the United States; that is,

21   the bank robbery of the Great Valley Bank at 799 State

22   Street, Pottstown, Pennsylvania as charged in Count 1 of this

23   information, and that you did these things in violation of

24   Title 18, United States Code, Section 924(c).

25       MR. HARK:  Your Honor, I don't mean to interrupt,

1    but we would waive a reading of the information.  He does

2    understand the charges.  I have discussed everything with

3    him.  If you would feel more comfortable reading from them,

4    that's fine.

5          THE COURT:  I do because this is his first

6    appearance.

7          Mr. Lucas, Count 3 alleges that on or about May 24,

8    2000 in the Eastern District of Pennsylvania that you, the

9    defendant David Lucas, knowingly and unlawful by force and

10   violence and by intimidation took from employees of the

11   National Bank of Malvern at 140 West Lancaster Avenue,

12   Frazer, Pennsylvania, here and after the bank, lawful

13   currency of the United States; that is, approximately $3,193

14   belonging to and in the custody, care and control, management

15   and possession of the bank, the deposits of which were

16   insured by the F.D.I.C., and in so doing that you, the

17   defendant, knowingly and unlawfully assaulted and put in

18   jeopardy the lives of the employees of this bank and other

19   persons by use of a dangerous weapon; that is, a .357

20   revolver in violation of Title 18, United States Code,

21   Section 2113(d).

22         Mr. Lucas, that's the charge in case No. 182.  Have

23   you seen the information before today?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Have you had a chance to talk to your

1      lawyer about it before today?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  In case No. 152 the charges are also

4      brought by information, and Mr. Pfannenschmidt said the plea

5      agreement indicates that you'll be pleading to the count that

6      is included in that information, the single count, Count 1.

7      It alleges that on or about March 6, 2000 in Fulton County,

8      Pennsylvania and within the Middle District of Pennsylvania

9      and elsewhere that you, the defendant, by force, violence and

10     intimidation did take from the person and presence of another

11     approximately $9,100 in money belonging to and in the care,

12     custody, control, management and possession of the Fulton

13     County National Bank, Warfordsburg, Pennsylvania, the

14     deposits of which were then insured by the F.D.I.C., in

15     violation of Title 18, United States Code, Section 2113(a).

16             Mr. Lucas, in case No. 350, that's 1:CR-00-350, the

17     indictment alleges that on or about April 15, 2000 in the

18     Western District of Pennsylvania that you, the defendant

19     David A. Lucas, by force, violence and intimidation did take

20     and attempt to take from the person and presence of another

21     money; namely, approximately $17,934.99 in United States

22     currency belonging to and in the care, custody, control,

23     management and possession of the Keystone Financial Bank

24     located on Old Route 126, Breezewood, Pennsylvania, a

25     financial institution, the deposits of which were then

1    insured by the Federal Deposit Insurance Corporation, and in

2    and effecting said robbery the defendant David A. Lucas did

3    place in jeopardy the life of another person by use of a

4    dangerous weapon, all in violation of Title 18, United States

5    Code, Section 2113(d).

6          Those are the charges that are added in your case.

7    I know there has been some delay in getting you to court on

8    the original charge because of consolidating all of these

9    charges, Mr. Lucas, but it's important that you know that in

10    connection with these newer charges you have all of the same

11    rights that you did for the original charge that was brought

12    in this case, the right to have a lawyer, the right to go to

13    trial in your case, and we're going to go over some of those

14    in a few minutes.  Do you feel that you have had adequate

15    time to review these new charges and to proceed with the plea

16    agreement?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Mr. Lucas, in order to take your guilty

19    plea on these charges I'm going to need to ask you a series

20    of questions under oath.  What that means is that you'll be

21    waiving what we call your right against self-incrimination.

22    That is, normally you would have a right to decline to

23    discuss these charges with anybody except your lawyer and

24    proceed to trial on the case, but today I'm going to ask you

25    questions about you, about your personal background and about

1    all of these cases.  In order to do that I have to place you

2    under oath.  You have to waive your right against

3    self-incrimination, and you have to answer all of my

4    questions completely and honestly.  If you give a false

5    answer to any question that I ask you, you could be

6    prosecuted for perjury.  Do you understand that?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Do you have any questions about any of

9    that?

10              THE DEFENDANT:  No, ma'am.

11              THE COURT:  How old are you?

12              THE DEFENDANT:  Twenty-seven.

13              THE COURT:  Do you read and write English?

14              THE DEFENDANT:  Yes, ma'am.

15              THE COURT:  How far did you go in school?

16              THE DEFENDANT:  I graduated.

17              THE COURT:  Graduated from high school?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  Have you taken any drugs or alcohol

20    before coming into court this morning?

21              THE DEFENDANT:  No.  No, ma'am.

22              THE COURT:  Because you're in custody.  Right?

23              THE DEFENDANT:  Yeah.

24              THE COURT:  All right, are you undergoing any

25    psychological or psychiatric counseling?

1      THE DEFENDANT:  No, ma'am.

2      THE COURT:  You have been represented by this

3 attorney I believe from the beginning of the charges that

4 were brought.  Is that right?

5      THE DEFENDANT:  Yes, ma'am.

6      THE COURT:  Have you been satisfied with the

7 representation that he's provided to you, Mr. Lucas?

8      THE DEFENDANT:  Yes, ma'am.

9      THE COURT:  Do you feel that you have had adequate

10 time to discuss all of your options in connection with all of

11 these various charges?

12     THE DEFENDANT:  Yes, ma'am.

13     THE COURT:  Now some of the charges in this case,

14 the new charges that I just read to you, are brought by what

15 we call information.  One of the cases was brought by

16 indictment, and what that means is that Mr. Pfannenschmidt or

17 somebody from his office went in front of a grand jury of

18 between 16 and 23 members and presented the evidence that he

19 had against you and asked them to vote, at least 12 of them

20 to vote, to bring charges against you.  In the cases that

21 were brought by information that did not happen.  Today, if

22 you proceed and enter a guilty plea on the information, you

23 waive your right to have your case presented to a grand jury

24 and to ask that grand jury to decide whether there is enough

25 evidence to bring charges against you.  Do you understand

1    that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Do you understand, Mr. Lucas, that in

4    connection with all of these cases you're entitled to a jury

5    trial on every single one of them?  You could come to this

6    courtroom, and your lawyer would participate in the selection

7    of 12 jurors who would hear your case.  I would instruct the

8    jurors that you enjoy what we call the presumption of

9    innocence; that is, as you sit here in this courtroom, they

10   must presume you an innocent man and require the government

11   to approve each and every one of these charges and every

12   element of the charges beyond a reasonable doubt.  They

13   couldn't convict you unless the government did that.

14             In an attempt to do that the government would call

15   witnesses and bring other evidence that they may have, and it

16   would be for them to prove the charge beyond a reasonable

17   doubt, to convince all 12 jurors, and all 12 of them would

18   have to vote to find you guilty in order for you to be

19   convicted at trial.

20             You would have certain rights to participate in

21   that trial, but you couldn't be required to do it.  You could

22   cross examine all the witnesses that the government brings.

23   You could testify in your own behalf.  You could bring any

24   witnesses or evidence that you might have and make it part of

25   the record in this case, and at the conclusion of that trial

1    again all 12 jurors would have to be convinced of your guilt

2    beyond a reasonable doubt.  They'd have to be convinced that

3    the government met its burden to prove these charges.

4            Today, if you enter a guilty plea, you're going to

5    give up all of those rights.  You give up the right to file

6    any pretrial motions that would apply to your case.  Perhaps

7    if you have given a statement, you could challenge the

8    admissibility of that statement into evidence.  You could

9    file other motions challenging evidence that the government

10   may be expected to present, and, of course, you would have

11   the right to appeal if the jury found you guilty.  Today you

12   give up those rights.  This is the final hearing that you'll

13   have except for the sentencing hearing on this case.  There

14   will be no determination of your guilt or innocence or the

15   admissibility of any evidence.  This will be the last stop

16   for you except for your sentencing.  Do you understand that?

17           THE DEFENDANT:  Yes, ma'am.

18           THE COURT:  Do you have any questions at all about

19   any of that?

20           THE DEFENDANT:  No, ma'am.

21           THE COURT:  Do you want to waive all of those

22   rights and enter a guilty plea in these cases?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  Mr. Pfannenschmidt, would you cite for

25   the record the plea agreement in this case.

1     MR. PFANNENSCHMIDT:  Your Honor, briefly, the plea

2   agreement provides that Mr. Lucas agrees to waive indictment

3   where appropriate and to plead guilty to all of the charges

4   in all four of these charging documents.  He further agrees

5   to make restitution in the total amount of $27,332.  The

6   government agrees that it will not bring any other charges

7   against Mr. Lucas arising out of the series of events, and it

8   will recommend to the Court a 3 point reduction for

9   acceptance of responsibility if Mr. Lucas so demonstrates and

10  also recommend to the Court a sentence within the applicable

11  guideline range.

12     THE COURT:  Mr. Lucas, is that your understanding

13  of the agreement?

14     THE DEFENDANT:  Yes, ma'am.

15     THE COURT:  There is a written agreement on file

16  with the Court.  I'm going to ask Miss Kennedy to show it to

17  you now.  Can you tell me whether or not it bears your

18  signature?

19     THE DEFENDANT:  Yes, that is my signature.

20     THE COURT:  Did you review all of this agreement

21  before you signed it?

22     THE DEFENDANT:  Yes, ma'am.

23     THE COURT:  It's important to note that it contains

24  a lot of provisions that haven't been recited here, and all

25  of those will apply to your case.  What Mr. Pfannenschmidt

1    has stated is sort of a summary of what your agreement is,

2    those are the essential terms, but there are a lot of other

3    terms in here.  Did you review all of those with your lawyer?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  You're accepting those terms?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Did anybody threaten you, coerce you or

8    make any promises to you that are not contained in the

9    agreement or are not part of the record in this case?

10             THE DEFENDANT:  No, ma'am.

11             THE COURT:  Do you understand that I'm not bound by

12   the agreement, this is between you and the prosecutor's

13   office?  For example, Mr. Pfannenschmidt has indicated that

14   he's going to be recommending to the Court that you be given

15   credit for what we call acceptance of responsibility.  I may

16   or may not give you that credit.  I have to make an

17   independent determination of whether you're entitled to it.

18   So this is your agreement.  He's going to make that

19   recommendation to me, but I may not take his recommendation.

20   Understood?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Any questions about that?

23             THE DEFENDANT:  No, ma'am.

24             MR. PFANNENSCHMIDT:  Your Honor, if I may, forgive

25   me for interrupting, but I realize one thing in terms of this

1    plea agreement that I had not noticed before.  The 924(c)

2    count in this case, it's from the eastern district, and I

3    believe in the plea agreement it references a mandatory

4    minimum of 7 years.  I notice that the firearm charge is an

5    SKS rifle, which may qualify as a semi-automatic assault

6    weapon under the law, and I wanted to make sure that it was

7    brought out at this point that that would be a mandatory

8    minimum of 10 years rather than 7 that's in the plea

9    agreement.

10              MR. HARK:  And that that would be consecutive.  It

11   would not run concurrent.  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Is this new information for you, Mr.

14   Lucas?  Mr. Pfannenschmidt, are you saying that the Court is

15   going to have to make a determination on that issue?  That

16   it's possible it will apply or are you certain at this --

17              MR. PFANNENSCHMIDT:  I am not certain it applies,

18   but I wanted to make sure that that was made clear at this

19   point, and I apologize, I just realized it.

20              THE COURT:  No, I think it's important for this

21   defendant to understand this.

22              Mr. Lucas, what Mr. Pfannenschmidt is saying, it

23   sounds like you are following this very well, and you

24   understand the nuances of your case, but just so we're clear,

25   what he is saying is that you signed this agreement

1    understanding that there was a mandatory minimum for one of

2    these charges for 7 years, and what he's saying is because of

3    the type of weapon involved here that mandatory minimum may

4    in fact be 10 years.  And again the lawyers may come to some

5    agreement on this.  If they don't, they're going to ask me to

6    make that determination, whether it's a mandatory 7 years or

7    10 years, and without knowing the facts of the case or having

8    looked at the statute now, I don't know how I'm going to

9    decide that, but I may decide that it's a mandatory 10 year

10   minimum.

11          MR. PFANNENSCHMIDT:  Do you understand that?

12          THE DEFENDANT:  Yes.

13          MR. HARK:  Your Honor, I have just spoke with Mr.

14   Pfannenschmidt, the weapon is in the eastern district, so

15   between now and hopefully well before the sentencing date

16   we'll try to get the weapon examined to make a specific

17   determination of what it is, and we'll provide you with that

18   report.

19          THE COURT:  Okay.  Mr. Lucas, I don't think --

20   right now nobody knows what your penalty is going to be in

21   this case, but I think it's pretty clear you're facing a

22   whole lot of time here, and there will be this mandatory

23   minimum of 10 years.  So it's really important that you

24   understand that and you understand the penalties that apply

25   in your case.  I'm going to ask Mr. Pfannenschmidt to talk

1    about those penalties, and I want you to listen very

2    carefully and ask me any questions that you have.  Okay?

3         THE DEFENDANT:  Yes, ma'am.

4         MR. PFANNENSCHMIDT:  Your Honor, the maximum

5    penalties for these charges, as I understand them, is at 198,

6    the charge of bank robbery, carries a maximum penalty of 20

7    years imprisonment and a fine of $250,000.  In 350, the bank

8    robbery charge there is armed bank robbery, which carries a

9    maximum penalty of 25 years in prison and a fine of $250,000.

10   In 152 the bank robbery charge is a 20 year maximum and a

11   $250,000 fine.  And in 182 both counts of bank robbery

12   charged are armed bank robbery, which carry a 25 year maximum

13   imprisonment and a fine of $250,000 on each count.  The

14   924(c) charge in that information, as we just discussed, may

15   have a mandatory minimum of 10 years, if not, it would be 7

16   years, and that has a possibility of a life imprisonment term

17   and a fine of $250,000.

18        THE COURT:  Have counsel discussed with Mr. Lucas

19   whether or not any of the penalties imposed in this case

20   would run concurrent or whether the Court is required to

21   impose concurrent sentences?  Is this part of the agreement?

22        MR. HARK:  Part of the agreement was that all of

23   the -- other than the 924(c) charge, the indictment Nos. 198

24   and 350 and 152 and 182, but for the third count, would be

25   concurrent, and the 924(c) charge would be consecutive to

1    those concurrent sentences.  Is that correct?

2         MR. PFANNENSCHMIDT:  Well, actually, I don't

3    believe we actually discussed specifically how the sentences

4    would work.  I believe they operate by operation of law,

5    which I believe in this case the Court -- the way that

6    technically is fashioned, I believe that they would --

7    normally what the Court does is you impose a sentence, and

8    then that sentence applies to all of them, and they run

9    concurrently to each other.  I don't believe we explicitly

10   agreed that that would be the case, but that would be my

11   expectation.

12        MR. HARK:  It sounds like the same thing, Your

13   Honor.

14        THE COURT:  Well, it may be an important point

15   because if the guidelines require this, then, of course, I

16   will follow the guideline law, and I will in all cases, but

17   if it's not required by the guidelines and I have discretion

18   in the matter, then I may not.  Do you believe the guidelines

19   require it, Mr. Pfannenschmidt?

20        MR. PFANNENSCHMIDT:  I don't believe there is an

21   explicit requirement of concurrent time among the charges to

22   which he's pled guilty at one time.  I believe that normally

23   is an issue when there is other charges or other sentencings

24   from other courts.  Normally it is not an issue in terms of

25   these particular set of charges.

1      THE COURT:  Does the probation office have any

2  opinion on that issue?

3      MR. VOUGHT:  Your Honor, in the bank robbery case

4  where there is multiple counts, the multiple count grouping

5  rule would apply in the sentencing guidelines.  He would get

6  an incremental penalty for each additional bank robbery

7  beyond the first, and therefore the guidelines would suggest

8  or not necessarily require but suggest concurrent terms.

9      MR. HARK:  That was where I was coming from, Your

10  Honor.

11      MR. VOUGHT:  But for the 924(c), of course.

12      THE COURT:  Suggests but not requires.

13      MR. VOUGHT:  I don't think there is a requirement

14  for it.

15      MR. HARK:  Your Honor, it was my understanding as

16  part of the plea agreement that that's the direction that we

17  were heading because -- and that's why everything was

18  transferred to this district as opposed to having a one

19  strike in the western district and one strike -- two strikes

20  in the eastern district and then coming here and it would be

21  a three strike scenario in terms of a mandatory life term due

22  to a prior record.

23      THE COURT:  All right.  Mr. Lucas, once again the

24  important point of all of this is that the decision on how

25  you're going to be sentenced and how much you're going to be

1    sentenced is mine.  If there is an opportunity for me to

2    impose other than concurrent time, I might do it.  It sounds

3    like everybody here is on the same page except me because I

4    don't know yet, I haven't seen -- I don't know the details of

5    these offenses, I don't know anything about your background,

6    but you're entering this with an expectation that there is

7    going to be concurrent time on all of these cases followed by

8    a lengthy mandatory sentence on the weapon charge, but I

9    don't know that.  I'm not guaranteeing you that.  Do you

10   understand that?

11        THE DEFENDANT:  Yes, ma'am.

12        THE COURT:  Do you have any questions about that?

13        THE DEFENDANT:  No, ma'am.

14        THE COURT:  Again you're looking at a huge amount

15   of time here, especially with the mandatory count on the

16   weapon charge.  You heard Mr. Pfannenschmidt, he said it's

17   either a 7 or a 10 year mandatory minimum, but it goes to

18   life.  The Court could impose as much as a life sentence on

19   that charge.  That's a lot.  And again because I don't know

20   anything about you, I don't know what your sentence is going

21   to be.  So you enter a guilty plea subjecting yourself to any

22   lawful sentence that I can impose in your case, including up

23   to a life sentence.

24        MR. HARK:  Do you understand that?

25        THE DEFENDANT:  Yes.

1          THE COURT:  Any questions about that?

2          THE DEFENDANT:  No, ma'am.

3          THE COURT:  Has anybody promised you what your

4     sentence would be in this case?

5          THE DEFENDANT:  No, ma'am.

6          THE COURT:  Have you talked to your lawyer about

7     the guidelines and how they apply to your case?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  You heard a little bit about them here.

10    What's going to happen is the probation office is going to

11    undertake an extensive investigation of you, your personal,

12    social, criminal history, financial history, and they're

13    going to write a report to the Court that will include all of

14    that information and then everything about each one of these

15    offenses, including how much money was involved, the impact

16    on the victims.  You and your lawyer will have a chance to

17    review all of that before I see it, and you will respond to

18    anything in the probation office report that you think is

19    inaccurate or incomplete, and you will have an opportunity to

20    add anything that you want to say about the report.  All of

21    that information will come back to me, and we'll have another

22    hearing when there will be a determination of your sentence,

23    but the probation office is going to calculate the guideline

24    range that applies to your case.

25          Every one of these cases has a maximum statutory

1    penalty, but that maximum statutory penalty may or may not

2    actually apply or be imposed in your case because based on

3    the particular offense and your background, there is going to

4    be a calculation of what the appropriate range is in your

5    case.  In most of the cases the judges have to sentence

6    within that range, it would be either a term of months or

7    years, and then only in exceptional cases where there is

8    something special about you or about the offense that

9    occurred, could I sentence you above the guideline range or

10   below the guideline range.  So right now we don't know what

11   that calculation of the guideline range will be that applies

12   to your case.  We only know that in most cases I will

13   sentence you within the guideline range, but for

14   extraordinary circumstances I might go above that.

15          The other thing you need to know about sentencing

16   in this case is that, of course, you'll be sentenced to a

17   period of incarceration, and you'll not be released early on

18   parole.  That is, if you have ever done any state time, you

19   have probably got a substantial portion of that sentence cut

20   off at the end because you were released on parole.  That

21   doesn't happen in the federal system.  You get some credit

22   for good time, but you don't get released early on parole

23   months or years ahead of time.  Any questions about that?

24          THE DEFENDANT:  No, ma'am.

25          THE COURT:  Mr. Lucas, really the most important

1    thing is that nobody knows what your sentence is going to be

2    in this case, and when you enter a guilty plea, you expose

3    yourself to the maximum that could be imposed in your case.

4    You take a risk by coming here and entering a guilty plea.

5    Do you understand that?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Any questions at all about that or

8    about anything that we have discussed so far?

9              THE DEFENDANT:  No, ma'am.

10             THE COURT:  Do you understand that if you're

11   dissatisfied with the sentence you draw in this case, it will

12   be too late, there is nothing you can do?  You can't withdraw

13   your guilty plea because you think the sentence is too harsh

14   or it's more than you thought it would be.

15             MR. HARK:  Do you understand that?

16             THE DEFENDANT:  Yes, sir, I understand.

17             THE COURT:  Mr. Pfannenschmidt, what is the factual

18   basis for these cases?

19             MR. PFANNENSCHMIDT:  Your Honor, if the case would

20   have gone to trial, the government would present evidence of

21   five bank robberies as follows:  The first occurred on March

22   6 of 2000 at the Fulton County Bank in Warfordsburg,

23   Pennsylvania.  At that time an individual carrying an SKS

24   rifle entered the bank and demanded money, received $9,100

25   and left the bank.

1        On March 22 of 2000 the Great Valley Bank in

2   Pottstown, Pennsylvania was robbed of $7,876 by an individual

3   who was carrying an SKS rifle.  He then left the bank after

4   he obtained the money.

5        The third was on April 15 of 2000 in Breezewood,

6   Pennsylvania, the Keystone Financial Bank was robbed of

7   $1,500 by an individual carrying a handgun.

8        The fourth was in Frazer, Pennsylvania, the

9   National Bank of Malvern was robbed on May 24 of 2000 of

10  $3,193 by an individual carrying a handgun.

11        And on July 11 of 2000 the Pennsylvania State Bank

12  in Gettysburg, Pennsylvania was robbed of $5,663 by an

13  individual carrying a handgun.

14        The descriptions of the robber in each case were

15  similar, and each of the banks was at that time insured by

16  the Federal Deposit Insurance Corporation.

17        On July 12 of 2000 the police in Millville, New

18  Jersey received a call indicating that Mr. Lucas, the

19  defendant, was on his way to assault an individual.  Based on

20  that information they located the vehicle being driven by Mr.

21  Lucas and attempted to stop it.  A chase ensued when the

22  driver Mr. Lucas fled in the vehicle.  He was pursued into

23  Wildwood Crest, New Jersey and eventually was stopped near

24  the beach.

25        Mr. Lucas exited the vehicle, fled on foot on the

1    beach, was pursued by officers and apprehended.  At the time

2    he was in possession of a black plastic bag which contained

3    United States currency.  He was then identified as the

4    defendant David Arthur Lucas.

5        The vehicle that Mr. Lucas was driving was checked

6    and was found to have been stolen from Huntingdon,

7    Pennsylvania on July 4, 2000, and the police there were

8    contacted and got a physical description of the individual

9    wanted for the armed bank robbery in Gettysburg on July 11

10   and determined that Mr. Lucas matched that description.  He

11   was then advised of his rights, and after waiving his rights

12   indicated that he had in fact robbed the five banks as

13   indicated.

14       Also the police obtained physical evidence from the

15   searches of the vehicle and other vehicles that were found

16   after the other robberies and obtained information that also

17   indicated that Mr. Lucas was the individual who had committed

18   the robberies.

19       Also found in the vehicle Mr. Lucas was driving on

20   July 12 was a .32 caliber handgun that was determined to have

21   been carried during the last robbery in Gettysburg.

22           THE COURT:  Mr. Lucas, are those things true?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  Mr. Pfannenschmidt is saying that

25   that's the evidence in a capsule version of what he's going

1    to present at trial to convict you of all of these charges.

2    Do you understand that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Anything that he said for the record

5    that you want to correct or quarrel with?

6              THE DEFENDANT:  No, ma'am.

7              THE COURT:  You agree with everything he said?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Is it still your desire to enter a

10   guilty plea as we stated?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  The Court finds that the defendant has

13   knowingly and intelligently waived presentment by indictment

14   in cases Nos. 1:CR-01-152 and 1:CR-01-182 and agreed to

15   proceed on information, that he's acting voluntarily, that no

16   force, threats or promises apart from the plea agreement have

17   been made to him, that he understands the rights and

18   consequences of entering a guilty plea on these cases and

19   that he is voluntarily waiving his right to trial.  The Court

20   also finds that the plea has a basis in fact and contains all

21   of the elements of the crimes charged, accordingly the Court

22   accepts the defendant's guilty plea on Counts 1, 2 and 3 of

23   case No. 1:CR-01-182, Count 1 of 1:CR-01-152, Count 1 of

24   1:CR-00-198 and Count 1 of 1:CR-00-350.  The Court will defer

25   sentencing pending the report of the probation office.

1          Counsel, is there anything else for the record?

2          MR. PFANNENSCHMIDT:  Your Honor, I believe, just to

3     clarify, at counsel's request I just wanted to make sure that

4     the intent of the parties as to this concurrent issue is

5     clear.  What we're referring to is that it's the intent of

6     the parties by Mr. Lucas entering the plea on all of these

7     charges together that the grouping rules would in fact apply,

8     and that therefore he would avoid serving consecutive

9     sentences for each of these in either different jurisdictions

10    or at different times.

11         THE COURT:  Very well.

12         MR. HARK:  And more specifically, Your Honor, as

13    opposed to having one indictment with 18 counts, this is two

14    informations and two indictments, but the intention is that

15    they still be grouped as one.  Although there is four pleas

16    to four different charges, it's still a grouping for the

17    sentencing guidelines, and I just want to inquire with my

18    client that although it is not explicit, that if there is not

19    direct sentencing guidelines that require the judge to

20    sentence you concurrently, the judge could sentence you

21    consecutively.  Do you understand the difference between

22    consecutive and concurrent?

23         THE DEFENDANT:  Yes.

24         MR. HARK:  Just so we're clear, a concurrent

25    sentence means that if you plead guilty to indictment 198 and

1   then you plead guilty to indictment 152, that a concurrent

2   sentence means you serve both sentences at the same time.

3   Whereas a consecutive sentence means you must serve all your

4   time on indictment 198 and then begin serving your sentence

5   on 152.  Do you understand that?

6              THE DEFENDANT:  Yes.

7              MR. HARK:  And the judge may or may not be bound by

8   what our intention is, my intention and the U.S. Attorney's

9   intention is regarding that concurrent or consecutive

10  sentence.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             MR. HARK:  And the judge could give you a

13  consecutive sentence for each of the two indictments and each

14  of the two informations that you signed in addition to the

15  mandatory consecutive on the 924(c) weapons charge.  Do you

16  understand that?

17             THE DEFENDANT:  Yes.

18             MR. HARK:  Do you still want to have the judge

19  accept your guilty plea today?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right, we'll be in recess.

22             Mr. Hark, would you stop in chambers please.  I'd

23  like to have a word with you.

24             MR. HARK:  Yes, Your Honor, thank you.

25             (The proceedings concluded.)

1

2

3          I hereby certify that the proceedings and evidence

4    of the court are contained fully and accurately in the notes

5    taken by me on the change of plea of the within cause and

6    that this is a correct transcript of the same.

7                        *Monica L. Zamiska*

8                        Monica L. Zamiska, RPR

9                        Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25